UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

LINCARE HOLDINGS INC. DATA
BREACH LITIGATION

Case No. 8:22-cv-1472-TPB-AAS

**PLAINTIFFS' UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND
GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs, B.B., Martha Chang, Ronald Fudge, Victor Juarez, Cherry Merrell, George Miller, and Lisa Torres ("Plaintiffs" or the "Settlement Class Representatives"), respectfully move for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I.  INTRODUCTION

In June 2022, Defendant, Lincare Holdings, Inc. ("Defendant" or "Lincare") disclosed that in September 2021, it identified unusual activity on certain systems within its network. (Doc. 50, ¶ 4). After launching an investigation, Lincare learned that it had experienced a cyberattack resulting in potential exposure of sensitive and private personal information of certain of its current and former patients (the "Data Security Incident"). (Doc. 50, ¶ 4).

On July 28, 2022, Plaintiffs filed a proposed class action lawsuit in the United States District Court, Middle District of Florida, relating to the Data Security Incident.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is attached hereto as **Exhibit 1**.

Thereafter, on December 30, 2022, Plaintiffs filed a Consolidated Class Action Complaint. (Doc. 50).

Thereafter, the parties engaged in detailed motion practice, including Lincare's Motion to Dismiss (Docs. 62, 78, 95), jurisdictional discovery (including written discovery, document production, and depositions) (Doc. 86), and discussions and exchanges of information preparing for mediation, including written communications and separate conversations with the mediator. S.A. § I(M).

On July 11, 2023, the parties engaged in mediation with mediator Rodney A. Max. (Doc. 86, ¶ 1). The parties also exchanged detailed mediation briefs with their respective positions on the merits. After extensive arm's length negotiations, the parties reached an agreement in principle on July 17, 2023. (Doc. 98).

The parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were negotiated between them. Those terms are memorialized in the Settlement Agreement and Release, which are set forth more fully below, and attached hereto as **Exhibit 1** ("Settlement Agreement" or "S.A."). This Settlement Agreement provides for the resolution of all claims asserted, or that could have been asserted, against Lincare relating to the Data Security Incident, by and on behalf of Plaintiffs and Settlement Class Members.

The Settlement provides for the creation of a $7,250,000.00 Settlement Fund that will be used to pay for all resolution related sums, including: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Medical Identity-Theft Protection and Monitoring Services through Medical Shield; (iv) Statutory

2

Damage Payments for California Confidentiality of Medical Information Act Claims; (v) reimbursement for Out-of-Pocket Losses and Attested Time; and (vi) Attorneys' Fee Award and Costs. *See* S.A. ¶¶ 39–40. Notably, "No portion of the Settlement Fund shall revert or be repaid to Defendant after the Effective Date." S.A. ¶ 45.

## II. BACKGROUND

### A. Information About the Settlement

The parties agreed on and retained Rodney Max, a highly experienced mediator, to assist with settlement negotiations. Joint Declaration of Class Counsel, attached as **Exhibit 2** ("Joint Decl."), ¶ 7. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On July 11, 2023, the parties had a full-day mediation session with Mr. Max. *Id.* ¶ 10. The negotiations were hard-fought throughout and the process was conducted at arm's length. *Id.* After extensive arm's length settlement negotiations conducted through Mr. Max, the parties reached an understanding in principle on the essential terms of settlement on July 17, 2023. *Id.* The subject of attorneys' fees, costs, and expenses (*i.e.*, the Fee Award and Costs that Plaintiffs will seek should the Settlement be approved), subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 12.

Based on Plaintiffs' counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Lincare,

Plaintiffs' counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

### B. The Terms of the Settlement Agreement

### 1. The Settlement Class

The proposed Settlement Class is defined as:

> All individuals in the United States whose PII was stored by Lincare Holdings Inc. and potentially disclosed, compromised, or accessed as a result of the cyber-breach or data incident experienced by Lincare Holdings Inc. in September 2021.

Excluded from the Settlement Class and California Settlement Subclass are: (1) the judges presiding over this Litigation, members of their immediate families, and any members of those judges' judicial staff; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; (3) Class Counsel and their immediate family members; and (4) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline and their legal representatives. S.A. ¶ 33.

### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Out-of-Pocket Losses for up to $5,000.00;

- Reimbursement of attested Lost Time up to four (4) hours at twenty dollars ($20) per hour;

- One (1) year of Medical Identity-Theft Protection and Monitoring Services, known as Medical Shield provided by CyEx (with the Pango Group) (including medical monitoring services; real-time alerts for suspicious activity; identity restoration and recovery services; and $1,000,000.00 in medical identity theft insurance with no deductible). This benefit is available regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time. However, the Settlement Class Member must elect this benefit, it is not automatic;

- Statutory Payments for CMIA Claims in the amount of $90.00.

S.A. ¶ 40.

Participating Settlement Class Members are subject to an individual aggregate cap of $5,000.00. Thus, Participating Settlement Class Members may submit claims for reimbursement of Attested Time, Out-of-Pocket Losses, and CMIA Claims (where appropriate for California Settlement Subclass members) but the combined claims will be subject to the individual aggregate cap of $5,000.00. S.A. ¶ 40.

The services to be provided by Pango under the Settlement are robust and important. The retail cost of buying the same Medical Identity-Theft Protection and Monitoring Services (*i.e.*, Medical Shield) would be $19.95 per person per month, amounting to $239.4 per year for this one year of service. These services are being provided under the Settlement for a total cost of $573,800.00 to be drawn from the Settlement Fund. *See* Declaration of Gerald Thompson, attached as **Exhibit 3**.

### 3. Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose Kroll Settlement

Administration, LLC (hereinafter "Kroll") to be appointed as Settlement Administrator. Kroll is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and Kroll believe is an effective program.

Subject to Court approval, this Notice program involves direct notice disseminated via U.S. mail to all Settlement Class members whose physical addresses are available within Lincare's records. S.A. ¶ 53. For those Settlement Class members whose physical address is not available within Lincare's records, Kroll will provide substitute media notice through myriad media outlets reflected in **Exhibits 1-D, 1-E**. S.A. ¶ 14. The forms of Notice are attached as **Exhibits 1-B** (Postcard Notice), **1-C** (Long-Form Notice), and **1-D** (Media Notice) to the Settlement Agreement. A declaration from Jeanne C. Finegan with additional details about the Notice program is attached hereto as **Exhibit 4** ("Finegan Decl.").

Finally, Kroll will also establish a Settlement Website. S.A. ¶¶ 27, 49. In addition to the Notice, the Settlement Website will include information about the Settlement, related case documents, and the Settlement Agreement. Settlement Class Members will also be able to submit claims electronically.

Notice of the Settlement will be given to the Settlement Class no later than thirty (30) days from the date of the Court's Preliminary Approval Order. S.A. ¶ 13.[2]

The Notice informs Settlement Class Members of the nature of the action, the

---

[2] A proposed Preliminary Approval Order is attached hereto as **Exhibit 1-F**.

litigation background, the terms of the agreement, the relief provided, Settlement Class Counsel's request for fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on Settlement Class Members. The Notice also describes the procedure for objecting to the Settlement; advises Settlement Class Members that they have the right to opt out and describes the consequences of opting out; and will state the date and time of the final approval hearing (subject to this Court's scheduling), advising that the date may change and how to check for those changes on the Settlement Website.

All Notice and Administrative Expenses, including disbursement of the Settlement benefits, will be drawn from the Settlement Fund. S.A. ¶ 51. Plaintiffs are informed that Notice and Administrative Expenses are expected to be approximately $1,641,000. Joint Decl. ¶ 15. The costs are broken down for the Court's review. Finegan Decl., ¶ 36, FN 11.

### 4. Exclusion and Objection Procedures

The Notice advises Settlement Class Members of their rights to object or opt out of the Settlement and directs Settlement Class Members to the Settlement Website for more information. The Notice provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Notice also provides instructions for Settlement Class Members to object to the Settlement and/or to Plaintiffs' Counsel's application for attorneys' fees, costs, and expenses. S.A. ¶¶ 52–59.

### 5. Attorneys' Fees, Costs, and Expenses

Lincare has agreed that, subject to this Court's approval, Class Counsel may

request an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $50,000.00. S.A. ¶¶ 67–70. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Joint Decl. ¶ 12. This motion will be filed at least thirty (30) days prior to the deadline for objecting to the proposed settlement, providing ample notice to Settlement Class Members.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (i) the exposure, compromise, or disclosure of Settlement Class Members' PII; (ii) Defendant's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (iii) Defendant's information security policies, procedures, and practices or training; and (iv) Defendant's notice of the Incident to Settlement Class Members.

S.A. ¶ 63.

## III.  ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Judges in this district have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[3]

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

---

[3] *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Lincare identified approximately 2.9 million people in the Settlement Class. Joint Decl. ¶ 17. Thus, numerosity is easily satisfied.

#### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D.

504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[4] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiffs alleged, among others, the following common questions:

a. Whether Lincare had a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII/PHI;

b. Whether Lincare knew or should have known of the susceptibility of its data security systems to a data breach;

c. Whether Lincare's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d. Whether Lincare's failure to implement adequate data security measures allowed the Data Security Incident to occur;

e. Whether Lincare failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f. Whether Lincare adequately, promptly, and accurately informed Plaintiffs and Class members that their PII/PHI had been compromised;

g. How and when Lincare actually learned of the Data Security Incident;

h. Whether Lincare's conduct, including its failure to act, resulted in or was the proximate cause of the Data Security Incident, resulting in the loss of the PII/PHI of Plaintiffs and Class Members;

i. Whether Lincare adequately addressed and fixed the vulnerabilities

---

[4] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

which permitted the Data Security Incident to occur;

j.  Whether Lincare engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective, and/or declaratory relief and/or an accounting is appropriate; and

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Lincare's wrongful conduct.

(Doc. 50 at ¶ 204). Such issues, focused on Lincare's conduct, satisfy commonality.[5]

### c.  Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[6] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically,

---

[5] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[6] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, i.e., that Lincare had a legal duty to protect Plaintiffs' and Class Members' personal information. Because there is a "sufficient nexus" between Plaintiffs' and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. They provided their personal information to Lincare and allege it was compromised by the Data Security Incident, just like the personal information of the Settlement Class was also allegedly compromised. Indeed, Plaintiffs' claims coincide identically with the claims of the Settlement Class, and Plaintiffs and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiffs have prosecuted this case for the benefit of all Settlement Class Members.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Joint Decl., ¶¶ Exhibits 1-5. Because Plaintiffs

and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2.  The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a.  Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by

representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[7] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[8]

Common issues readily predominate here because the central liability question in this case—whether Lincare failed to safeguard Plaintiffs' personal information, like that of every other Class member—can be established through generalized evidence.[9] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Lincare had a duty to exercise reasonable care in safeguarding, securing, and protecting their personal information and whether Lincare breached that duty. The many common questions that arise from Lincare's conduct

---

[7] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[8] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[9] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[10] Because the claims are being certified for settlement purposes, there are no manageability issues.[11]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[12] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

---

[10] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[11] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[12] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[13] Additionally, the Settlement will give the parties the benefit of finality.

## B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in their Joint Declaration, proposed

---

[13] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

Settlement Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. *Id.* Accordingly, the Court should appoint John A. Yanchunis, Stephen R. Basser, Raina Borrelli, Alexandra M. Honeycutt, and Carl V. Malmstrom as Settlement Class Counsel.

## C. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate for, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[14]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[15] Thus, while district courts have discretion in deciding whether to approve a proposed

---

[14] *See Taylor v. Citizens Telecom Servs. Co., LLC*, ----F. Supp. 3d ---- 2022 WL 456448, at *2 (M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[15] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). Class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Trans.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

settlement, deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1. The Settlement Satisfies Amended Rule 23(e)

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes. As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiffs and proposed Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Rodney Max. Joint Decl. ¶ 7.[16] Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b. Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to succeed against the pending motion to dismiss (Doc. 62), and on a motion for class certification, and likely survive an appeal thereof.

Pursuant to the Settlement, Lincare will create a Settlement Fund of $7,250,000. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of up to $5,000 for out-of-pocket losses, as well as reimbursement of Attested Time up to four (4) hours at twenty dollars ($20) per hour. Settlement Class Members are also eligible to enroll in valuable Medical Identity-Theft Protection and Monitoring Services. Also, California Settlement Subclass Members

---

[16] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

are eligible to submit claims for $90 CMIA statutory payments. Given the relief available, proposed Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are challenges to standing as well as attacks on the substantive claims Plaintiffs have alleged. *See* (Doc. 62). Nevertheless, and despite the strength of the Settlement, Plaintiffs are pragmatic in their awareness of the various defenses available to Lincare, as well as the risks inherent to continued litigation. Lincare consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. S.A. ¶¶ 39–46. Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Settlement Administrator following the Effective Date. *Id.*

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Joint Decl. ¶ 12. Plaintiffs will seek attorneys' fees of up to thirty percent (33.33%) of the Settlement Fund, plus reasonable out-of-pocket costs and litigation expenses incurred, not to exceed $50,000. S.A. ¶ 67. Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid no later than three (3) days after the Effective Date. *Id.*

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of Rule 23(e)(2) is therefore met.

### c. The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form. Joint Decl. ¶ 20. Also, all California Settlement Subclass Members are eligible for CMIA payments following submission of a claim form. Joint Decl. ¶ 20.

## 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."[17] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[18]

---

[17] *Id.*; *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

[18] *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

**D.  The Proposed Class Notice Satisfies Rule 23.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The Notice program here satisfies all of these criteria and is designed to provide the best notice practicable. Foremost, the Notice is reasonably calculated to apprise

the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Settlement Class Counsel's request for Fee Award and Costs, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). Additionally, the Notice program is comprised of direct notice sent by U.S. mail for Settlement Class Members whose physical address is available within Lincare's records and Notice posted to the Settlement Website. S.A. ¶¶ 14, 49. This approach will satisfy due process as set forth in the Finegan Declaration.

The form of the Preliminarily Approval Order, **Exhibit 1-F**, has been drafted and approved by counsel for the Parties. The proposed claim form, **Exhibit 1-A** to the Settlement, likewise satisfies all of the above criteria. Finally, the Settlement Administrator will provide the notification required by CAFA, 28 U.S.C. § 1715, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. S.A. ¶ 48.

Therefore, the Notice and Notice program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notice, Notice program, and the form and content of the claim form and Notice.

**E.  The Court Should Schedule a Final Approval Hearing.**

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under

Rule 23(e); and whether to approve Settlement Class Counsel's request for Fee Award and Costs. Plaintiffs request that the Court schedule the Final Approval Hearing at a date convenient for the Court, at least 90 days after the appropriate government officials are notified pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than 30 days prior to the hearing.

## IV.    CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Plaintiffs as Settlement Class Representatives; (4) appointing John A. Yanchunis, Stephen R. Basser, Raina Borrelli, Alexandra M. Honeycutt, and Carl V. Malmstrom as Settlement Class Counsel; (5) approving the proposed Notice program and authorizing its dissemination; (6) appointing Kroll as the Settlement Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process.

Dated: October 6, 2023                    Respectfully submitted,

*/s/ John A. Yanchunis*

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

STEPHEN R. BASSER
sbasser@barrack.com
**BARRACK RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0660
Fax: (215) 963-0838

RAINA C. BORRELLI
raina@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

ALEXANDRA M. HONEYCUTT
ahoneycutt@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PPLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080

CARL V. MALMSTROM
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114

***Attorneys for Plaintiffs and the Proposed
Class***

## <u>Local Rule 3.01(g) Certification</u>

In accord with Local Rule 3.01(g), Plaintiffs conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 6, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ *John A. Yanchunis*    </u>