## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release ("Agreement") is made and entered into on October 5, 2023, by and among the Settlement Class Representatives (as defined in Paragraph 34), for themselves and on behalf of the Settlement Class (as defined in Paragraphs 32 and 33), and Lincare Holdings Inc. ("Lincare" or "Defendant") subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Defendant enter into this agreement by and through their respective counsel. As provided herein, Defendant and Settlement Class Representatives hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representatives and the Settlement Class that have or could have been asserted against Defendant in the consolidated action titled *In re: Lincare Holdings, Inc. Data Breach Litigation*, Case No. 8:1228-cv-1472-TPB-AAS, pending in the United States District Court for the Middle District of Florida, Tampa Division (the "Litigation"), which includes all related lawsuits and actions that were consolidated into the Litigation, shall be settled and compromised upon the terms and conditions contained herein. Settlement Class Representatives and Defendant collectively are referred to herein as the "Parties."

## I.    <u>RECITALS</u>

A.    This litigation arises from a security incident (the "Incident," as described in this subparagraph and as defined below). On September 26, 2021, Defendant identified unusual activity on certain systems within its electronic network. Defendant took immediate action after learning of the Incident to secure its network and launched an investigation, including working with outside cybersecurity experts to determine the source of the activity and potential impact on Defendant's network. The investigation confirmed that certain systems may have first been accessed on September 10, 2021. The unauthorized access was blocked by September 29, 2021. Defendant promptly began a comprehensive review of all potentially impacted data to identify individuals who may have been affected by the Incident. The review required customized protocols and programming in order to analyze the data and identify key information, which included the use of outside vendors. Once the process was complete, including consolidation and deduplication efforts, Defendant identified approximately 2,365,718 potentially impacted individuals for whom it had mailing addresses. Defendant identified approximately 552,726 additional individuals potentially impacted by the Incident who were either deceased (without a next-of-kin contact on file) or did not have an identifiable mailing address within Defendant's systems.

B.    Defendant notified the 2,365,718 potentially impacted individuals identified during its review of the Incident. Defendant hired an outside firm, Kroll Settlement Administration, LLC ("Kroll"), to mail letters to these individuals to inform them of the Incident and to advise them that their personal information, possibly including first and last names, addresses, Lincare account numbers, date of birth, medical information, which may include information concerning medical treatments individuals received such as provider name, dates of service, diagnosis/procedure, and/or account or record numbers, health insurance information, and/or prescription information may have been involved in the Incident. Defendant's review determined that approximately 15,817 individual's Social Security numbers may have been involved in the Incident. Notifications were mailed out in waves, beginning in November 2021.

C.    At the same time, Defendant provided notice of the Incident on its website, through a separate notice.  Additionally, after completion of Defendant's review of the data and address reconciliation, Defendant determined that media notification was triggered.  Defendant issued media notice on June 3, 2022, which paralleled the notice from Defendant's website.  Defendant also notified the U.S. Department of Health and Human Services, Office of Civil Rights, of the Incident, and at least 20 separate state Attorneys General whose offices required separate notice. Defendant also established a call center operated by Kroll to answer any questions from potentially impacted individuals.

D.    On June 28, 2022, Martha Chang filed a lawsuit against Defendant asserting claims on behalf of herself and all others similarly situated arising out of the Incident (the "Chang Case"). Subsequently, five other cases were filed in the District Court for the Middle District of Florida also premised on the Incident and alleging similar facts and theories of recovery as those in the Chang Case.  These cases were styled *Catherine Cottam, Individually, and on behalf of all others similarly situated, v. Lincare Holdings Inc.*, Case No. 8:22-cv-01595 (the "Cottam Case"), *Victor Juarez, on behalf of himself and all others similarly situated, v. Lincare Holdings Inc.*, Case No. 8:22-cv-01704 (the "Juarez Case"), *Ronald Fudge and Lisa Torres, individually, and on behalf of all others similarly situated, v. Lincare Holdings Inc.*, Case No. 8:22-cv-01961-SDM-CPT (the "Fudge/Torres Case"), *Cherry Merrell, individually and on behalf of all others similarly situated, v. Lincare Holdings Inc.*, Case No. 8:22-cv-02020-VMC-AAS (the "Merrell Case"), and *George Miller and Michael McAuley, individually and on behalf of all others similarly situated, v. Lincare Holdings Inc.,* Case No. 8:22-cv-2142-WFJ-JSS (the "Miller/McAuley Case").  These cases were transferred to the Honorable Judge Thomas Barber, who was overseeing the Chang Case.

E.    On September 7, 2022, Judge Barber entered an Order Granting Motion to Consolidate ("Consolidation Order") in the Chang Case.  Pursuant to the Consolidation Order, Judge Barber consolidated the Cottam Case and the Juarez Case with the Chang Case for all purposes, including discovery and trial, under Master Case Number 8:22-cv-1472-TPB-AAS, i.e., the Litigation.  Additionally, the Consolidation Order directed the Clerk to change the caption of the consolidated action to *In re Lincare Holdings Inc. Data Breach Litigation* (the "Master Case")*.*

F.    On September 26, 2022, Judge Barber entered another Order Granting Motion to Consolidate (the "Second Consolidation Order") in the Master Case.  Pursuant to the Second Consolidation Order, Judge Barber consolidated the Fudge/Torres Case, the Merrell Case, and the Miller/McAuley Case into the Master Case.

G.    Additionally, three other cases were filed in California that were premised on the Incident.  These cases were styled *Kenneth Eichman, an individual, Alice Lewis, an individual, and on behalf of classes of similarly situated individuals, v. Lincare Holdings Inc., et al.* (the "Eichman Case"), *Stephen Burton on behalf of himself and all others similarly situated, v. Lincare Inc.* (the "Burton Case"), and *Charlene Kennedy, individually and on behalf of all others similarly situated, v. Lincare Holdings Inc.* (the "Kennedy Case").  The Eichman Case, the Burton Case, and the Kennedy Case were all transferred to the District Court for Middle District of Florida. After the Eichman Case, the Burton Case, and the Kennedy Case were transferred to the Middle District, all were transferred within the District to Judge Barber.

H.    Finally, an additional case was filed in Missouri that was also premised on the Incident.  That case was styled *B.B. individually and on behalf of all others similarly situated, v. Lincare Inc.* (the "B.B. Case").  The B.B. Case was transferred to the District Court for the Middle District of Florida, and once transferred into the Middle District of Florida, the case was transferred within the District to Judge Barber.

I.    On November 30, 2022, Judge Barber entered another Order Granting Motion to Consolidate (the "Third Consolidation Order") in the Master Case.  Pursuant to the Third Consolidation order, Judge Barber consolidated the Eichman Case, Burton Case, Kennedy Case, and B.B. Case into the Master Case.  The ten consolidated class action lawsuits then proceeded under the consolidated Master Case, i.e., the Litigation.

J.    On December 30, 2022, Plaintiffs filed a Consolidated Class Action Complaint in the Litigation (the "Complaint"), asserting claims for negligence; negligence per se; breach of fiduciary duty; breach of implied contract; unjust enrichment; violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*); violation of the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*); violation of the California Consumer Records Act (Cal. Civ. Code § 1798.82, *et seq.*); violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code, § 17200, *et seq.*); violation of the Missouri Merchandising Practices Act (Mo. Ann. Stat. § 407.010, *et seq.*); and violation of New York General Business Law § 349.

K.    On February 13, 2023, Defendant moved to dismiss the Complaint in its entirety (the "Motion to Dismiss") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  In the Motion to Dismiss, Defendant lodged a factual attack on standing.  As a result, the parties engaged in jurisdictional discovery following the filing of the Motion to Dismiss.  Plaintiff served Requests for Production on Defendant, seeking information including but not limited to issues impacting Plaintiffs' standing under Article III, Defendant's identification and investigation of the Incident, Defendant's process for identifying potentially impacted individuals and information, and Defendant's remedial measures following the Incident.  Defendant responded to the written discovery requests and produced thousands of pages of documents to Plaintiffs.  Defendant also served Interrogatories and Requests for Production on Plaintiffs.  Plaintiffs responded to the written discovery requests and produced more than 130 pages of documents to Defendant.  Plaintiffs also conducted the depositions of Defendant's corporate representative (split between two depositions), Lincare's Head of Information Security, and Lincare's Chief Data Officer.  Plaintiffs also served non-party discovery on the third-party vendor who helped Defendant identify individuals and information potentially impacted by the Incident and further deposed a corporate representative of that vendor. The Parties also engaged in informal discovery leading up to and following the mediation.

L.    After conducting jurisdictional discovery, on May 30, 2023, Plaintiffs filed a response in opposition to the Motion to Dismiss, and Lincare replied to same on June 20, 2023. Before the hearing scheduled for July 19, 2023, on the pending Motion to Dismiss, the Parties agreed to mediate the case before an independent mediator.

M.   On July 11, 2023, the Parties participated in a formal mediation session with mediator Rodney Max, Esq., of Upchurch, Watson, White & Max.  Mr. Max is a well-known mediator with extensive experience in mediating federal class action lawsuits, including class actions involving cyber breaches.  Prior to the mediation, the Parties engaged in discussions and the exchange of information preparing for mediation, including written communications and separate conversations with the mediator.  The formal mediation session occurred on July 11, 2023, and lasted more than 14 hours.  Following the July 11 session, the Parties continued to negotiate over the next several days and reached an understanding in principle on July 17, 2023.

N.   On July 17, 2023, the Parties reached an understanding in principle concerning the essential terms of a proposed settlement for the Litigation requiring submission of a final settlement agreement to the Court for preliminary approval.  Documentation of the settlement involved the negotiation of additional settlement terms and numerous documents related to this Settlement, including this Agreement.

O.   The Parties did not discuss attorneys' fees during the mediation, or at any time prior to agreeing to the essential terms of the Parties' Settlement (as defined in Paragraph 22) and notifying the Court of same on July 17, 2023.

P.   Throughout the Litigation, and prior to and after the mediation, Class Counsel (as defined in Paragraph 3) conducted an examination and investigation of the facts and law relating to the matters set forth in the Complaint and engaged in numerous discussions with Defendant regarding the claims therein, including but not limited to the discovery described above.

Q.   The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined in Paragraph 63) of the Settlement Class.  The Parties intend this Agreement to bind the Settlement Class Representatives, Defendant, and all Settlement Class Members (as defined in Paragraph 25) who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice as to Defendant, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.   DEFINITIONS

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.   "Claims Deadline" means ninety (90) days after the Notice Deadline.

2.   "Claim Form" or "Claim" means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement.  The proposed Claim Form, which may be modified for formatting purposes, is attached hereto as Exhibit A.

3.      "Class Counsel" refers to the following attorneys who are counsel for Plaintiffs and seek to be appointed as counsel for the Settlement Class: means John A. Yanchunis (Morgan & Morgan), Stephen R. Basser (Barrack, Rodos & Bacine), Raina Borrelli (Turke & Strauss LLP), Alexandra M. Honeycutt (Milberg, Coleman, Bryson, Phillips, Grossman PLLC), and Carl V. Malmstrom (Wolf Haldenstein Adler Freeman & Herz LLC).

4.      "Court" refers to the Honorable Thomas P. Barber, United States District Court Judge for the Middle District of Florida, Tampa Division, or such other judge to whom the Litigation may be assigned.

5.      "Days" means calendar days, except, when computing any period of time prescribed or allowed by this Agreement, does not include the day of the act, event, or default from which the designated period of time begins to run. Further, when computing any period of time prescribed or allowed by this Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal legal holiday.

6.      "Effective Date" means the first business day after which all of the following events have occurred: (a) Class Counsel and Defendant's counsel have executed this Agreement; (b) the Court has entered a Final Judgment; and (c) the time in which to seek review, rehearing, or appeal of the Final Judgment has expired without any review, rehearing or appeal having been sought or taken, *i.e.*, thirty (30) days after entry of the Final Judgment, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and expenses in the amounts requested by Class Counsel.  Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee and Expense Award awarded to Class Counsel (as defined in Paragraph 67).

7.      "Escrow Account" means the account maintained and/or managed by the Settlement Administrator to hold the Settlement Fund.

8.      "Final Approval" means the date that the Court grants final approval of the Settlement and determines the amount of fees and expenses to be awarded to Class Counsel (as defined in Paragraph 67).  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

9.      "Final Judgment" means the final judgment and order of dismissal to be entered by the Court upon Final Approval that is the same in all material respects as set forth in Section X.

10.      "Incident" means the September 2021 cyber-breach and data incident resulting from and involving an intrusion into Defendant's system by an external individual otherwise described in paragraph I(A), above.

11.      "Lost Time" means time reasonably spent by Settlement Class Members dealing with the effects or perceived effects of the Incident.

– 5 –

12. "Notice" means the forms of notice to be disseminated to Settlement Class Members informing them, *inter alia*, about this Agreement; their rights to participate in the Settlement; to opt-out, or to object to same; and to appear at the Final Approval Hearing (as defined in Paragraph 47), and instructing them on how to submit a Claim. Notice shall be substantially in the form of the Postcard Notice, Long Form Notice, and Media Notice forms attached as Exhibits B, C, and D respectively, to this Agreement and approved by the Court.

13. "Notice Deadline" means thirty (30) days after entry of the Preliminary Approval Order (as defined in Paragraph 47).

14. "Notice Program" means the plan for disseminating Notice, as set forth in this Agreement, which consists of: (i) a direct-mail postcard notice to those Settlement Class Members for whom Defendant can ascertain a mailing address from its records with reasonable effort, as updated using a National Change of Address database ("Mail Notice"); (ii) creation of a Telephone Hotline (as defined in Paragraph 29) and corresponding call center for Settlement Class Members; (iii) notice posted on the Settlement Website (as defined in Paragraph 27); and (iv) the substitute notice plan proposed by Kroll, which includes online display advertising, social media advertising, keyword search, and a press release to various media outlets, as detailed in Exhibit E ("Substitute Media Notice"). The forms of notice shall be substantially in the Postcard Notice, Long Form Notice, and Media Notice forms attached as Exhibits B, C, and D, respectively, to this Agreement and approved by the Court. The Notice Program shall be effected in substantially the manner provided in Section IX.

15. "Objection Deadline" means sixty (60) days after the Notice Deadline.

16. "Opt-Out Deadline" means sixty (60) days after the Notice Deadline.

17. "Out-of-Pocket Loss" means any out-of-pocket loss or unreimbursed charge or expense that is fairly traceable to the Incident, which was incurred between September 10, 2021, and the date of the Notice (of this Settlement), and which has not already been fully reimbursed by Defendant, which would include without limitation unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members must submit Reasonable Documentation (as defined in Paragraph 20) for all Out-of-Pocket Losses.

18. "Personally Identifiable Information" or "PII" means identifiable information including, without limitation, name, address, telephone number, date of birth, Social Security number, driver's license or identification card number, financial information, payment card account numbers, expiration dates, card verification values, health information, medical information, medical treatments, dates of service, diagnosis codes, medical account information, and insurance information potentially compromised as a result of the Incident. "Personally Identifiable Information" or "PII" includes, without limitation, all protected health information ("PHI") defined under the Health Insurance Portability and Accountability Act.

19. "Plaintiffs' Counsel" refers to the attorneys of record who have appeared

on behalf of and as counsel for the Plaintiffs in this Litigation.

20.    "Reasonable Documentation" means documentation submitted by a Settlement Class Member in support of an Out-of-Pocket Loss Claim, which tends to show that the Out-of-Pocket Loss in question is fairly traceable to the Incident.  Non-exhaustive examples of Reasonable Documentation include credit card statements, bank statements, invoices, official governmental correspondence, and receipts.  A Valid Claim, as defined below, other than a request for Lost Time, cannot be supported solely by a personal certification, declaration, or affidavit from the claimant or the claimant's representative(s), but such information may be considered with other Reasonable Documentation.

21.    "Releasing Parties" means the Settlement Class Representatives, all Settlement Class Members who do not timely and properly exclude themselves by "opting out" from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

22.    "Settlement" means the settlement into which the Parties have entered to resolve the Litigation.  The terms of the Settlement are as set forth in this Agreement, including the exhibits hereto.

23.    "Settlement Administrator" means Kroll Settlement Administration, LLC.

24.    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement by a Settlement Class Member eligible to recover benefits under the terms of this Settlement Agreement.

25.    "Settlement Class Members" or "Settlement Class" means all persons who fall within the settlement class definition set forth in Paragraph 32.

26.    "Settlement Fund" means a non-reversionary common fund to be established by Defendant in the amount of Seven Million Two-Hundred and Fifty Thousand Dollars ($7,250,000.00) which shall be deposited into the Escrow Account as set forth in Paragraph 7.

27.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order (as defined in Paragraph 47), but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the Preliminarily Approval Order, the Claim Form, the Complaint, and such other documents as Class Counsel and Defendant agrees to post, or that the Court orders posted, on the website.  The Settlement Website shall include an "Important Dates" section that prominently lists the notable dates and deadlines concerning the Settlement, as set forth herein.  The URL of the Settlement Website, if available, shall be www.LincareSettlement.com.  If this URL is unavailable, the Settlement Website URL will be agreed upon by Class Counsel and Defendant.  Settlement Class Members shall be able to submit Claim Forms electronically via the Settlement Website.  The Settlement Website shall not include any advertising and shall remain operational until at least fifteen (15) days after the Claims Deadline.

– 7 –

28.    "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendant with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

29.    "Telephone Hotline" means the toll-free telephone number that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement. Settlement Class Members shall be able to request a mailed copy of Claim Forms telephonically via the Telephone Hotline. The Telephone Hotline shall not include any advertising and shall remain operational until at least fifteen (15) days after the Claims Deadline.

30.    "Unknown Claims" means any of the Released Claims (as defined in Paragraph 63) that any Settlement Class Member, including any Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80, et seq., Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20- 7-11), which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties have read and understand California Civil Code § 1542, and expressly acknowledge and agree that any and all rights under § 1542 of the California Civil Code, other than any rights specifically reserved by law or regulation, are waived.

Settlement Class Members, including Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment

– 8 –

shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

31.    "Valid Claims" means Settlement Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing.

### III.    SETTLEMENT CLASS

32.    For settlement purposes only, the Parties agree that the Court should certify the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), defined as:

> All individuals in the United States whose PII was stored by Lincare Holdings Inc. and potentially disclosed, compromised, or accessed as a result of the cyber-breach or data incident experienced by Lincare Holdings Inc. in September 2021.

If for any reason whatsoever this Settlement is not finalized or the Settlement as detailed in this Agreement is not finally approved by the Court, the certification of the Settlement Class shall be void, and the Parties and the Litigation will return to the status as it existed on July 16, 2023, and no doctrine of waiver, estoppel, or preclusion will be asserted based on this Agreement or the Settlement terms contained herein, in any proceedings, in support of or in response to any motion seeking class certification, or otherwise asserted at any other stage of the Litigation or in any other proceeding.

33.    Excluded from the Settlement Class is the Judge presiding over this Litigation, the Judge's immediate family members, and any members of the Judge's judicial staff, the officers and directors of Defendant and their immediate family members, Class Counsel and their immediate family members, and persons who timely and validly request exclusion from the Settlement Class, and the legal representatives of each of these excluded categories of persons.

34.    For settlement purposes only, Class Counsel shall seek, and Defendant shall not oppose, the appointment of John A. Yanchunis (Morgan & Morgan), Stephen R. Basser (Barrack, Rodos & Bacine), Raina Borrelli (Turke & Strauss LLP), Alexandra M. Honeycutt (Milberg, Coleman, Bryson, Phillips, Grossman PLLC), and Carl V. Malmstrom (Wolf Haldenstein Adler Freeman & Herz LLC) as Class Counsel and appointment of Plaintiffs Martha Chang, B.B., Ronald Fudge, Victor Juarez, Cherry Merrell, George Miller, and Lisa Torres as settlement class representatives ("Settlement Class Representatives"). The Settlement Class Representatives will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. Subject to the provisions set forth in Paragraphs 32, above, and 37, 38, and 73, below, Defendant agrees not to contest certification of the Settlement Class.

### IV.    NO ADMISSION OF LIABILITY

35.    Defendant vigorously disputes the claims alleged in the Litigation and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Defendant has

– 9 –

agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

36.    Class Counsel and the Settlement Class Representatives believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement and the risks associated with the continued prosecution of the Litigation.  Class Counsel and the Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

37.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

38.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## V.    <u>SETTLEMENT CONSIDERATION</u>

39.    In exchange for Plaintiffs' and Settlement Class Members' release of claims as set forth in Section XI, Defendant will provide the following relief as part of the Settlement, as described in further detail below: (i) Identity theft protection and medical information monitoring through Medical Shield, (ii) Payment for Out-of-Pocket Losses fairly traceable to the Incident, (iii) Payment for attested Lost Time spent remedying issues related to the Incident, (iv) Payment for certain statutory claims by Settlement Class Members who were residents of California at the time of the Incident, and (v) Non-Monetary Relief, which includes Defendant's adoption and maintenance of certain Enhanced Data Security Measures (as defined in Paragraph 41).

40.    Within twenty-one (21) business days after entry of an order granting Final Approval of the Settlement, Defendant will deposit the full amount of the Settlement Fund into the Escrow Account, minus any amounts previously paid by Defendant to the Settlement Administrator to cover the costs of settlement administration and Notice (which Defendant will pay as required to administer the Settlement after entry of the Preliminary Approval Order).  From the Settlement Fund, the Settlement Administrator shall pay all costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; all Taxes and Tax-Related Expenses; the amount of all Valid Claims; the costs for Medical Shield monitoring; and any Fee and Expense Award approved for or awarded to Class Counsel. The Settlement Fund represents the total and sole extent of Defendant's monetary obligations under this Settlement Agreement.  Defendant's total payment under the Settlement Agreement, which shall not exceed

the amount of $7,250,000.00 (Seven Million Two Hundred Fifty Thousand Dollars and No Cents) under any circumstances, thus includes and covers all payments of and for all Valid Claims (including for Out-of-Pocket Losses, Lost Time, and California Claims), all costs of administration of the Settlement, all Taxes and Tax-Related Expenses, all costs to carry out the Notice Program; all costs for Identity Theft Protection (Medical Shield monitoring); and any Fee and Expense Award approved by the Court for or awarded to Class Counsel. The Settlement Administrator shall be responsible for all tax filings with respect to the Settlement Fund. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

Taxes and Tax-Related Expenses relating to the Settlement Fund shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representatives or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Settlement Class Representative and participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

Defendant shall make available the following compensation to Settlement Class Members who submit Valid Claims:

> i. <u>Identity Theft Protection</u>. Defendant will provide one year of "Medical Shield" monitoring services to Settlement Class Members who submit valid Claim Forms requesting Medical Shield, commencing within thirty (30) days of the Effective Date of the Settlement. Medical Shield coverage (or its equivalent) will include, among other things, (i) healthcare insurance plan ID monitoring; (ii) medical record number monitoring; (iii) national provider identifier monitoring; (iv) Medicare Beneficiary Identifier monitoring; (v) International Classification of Diseases monitoring; (vi) Health Savings Account monitoring; (vii) Dark Web monitoring; (viii) $1,000,000 Identity Theft Insurance; (ix) real-time authentication alerts; (x) high-risk transaction monitoring; (xi) security freeze assist; and (xii) immediate remediation assistance if identity theft is suspected. All eligible Settlement Class Members who submit a valid Claim Form requesting Medical Shield shall receive enrollment instructions from the Settlement Administrator and be eligible to receive one year of the foregoing complimentary services commencing within thirty (30) days of the Effective Date. All costs associated with the Medical Shield coverage provided in this Agreement shall be paid exclusively out of the Settlement Fund.

> ii. <u>Out of-Pocket Losses</u>. Settlement Class members who claim they

suffered reasonable Out-of-Pocket Losses as a result of the Incident shall be entitled to reimbursement in an amount not to exceed a single payment of Five Thousand Dollars and No Cents ($5,000.00), subject to the terms and conditions set forth herein and in the Claim Form attached hereto as Exhibit A ("Out-of-Pocket Loss Claimant"). Payments for Out-of-Pocket Loss claims shall be capped at Five Thousand Dollars and No Cents ($5,000.00) per each eligible Out-of-Pocket Loss Claimant. To be eligible to receive up to, but not exceeding, Five Thousand Dollars and No Cents ($5,000.00) pursuant to this subparagraph, an Out-of-Pocket Loss Claimant must submit a valid and timely Claim Form and Reasonable Documentation supporting the claim for Out-of-Pocket Losses on or before the Claims Deadline and otherwise comply with the terms of the Claim Form attached hereto as Exhibit A, and such Claim Form must be approved by the Settlement Administrator. All costs associated with the Out-of-Pocket Loss Claims, including the amounts paid on Valid Claims and administration costs, shall be paid exclusively out of the Settlement Fund.

iii.  <u>Lost Time</u>. Subject to the Lost Time restriction set forth in the immediately following subparagraph, applicable to eligible Out-of-Pocket Loss Claimants with claims meeting or exceeding Five Thousand Dollars and No Cents ($5,000), Settlement Class members who claim they suffered Lost Time as a result of the Incident can submit a self-verifying statement under penalty of perjury for Lost Time and be reimbursed for up to four (4) hours at Twenty Dollars per hour ($20/hour), in accordance with the terms and conditions set forth herein and in the Claim Form attached hereto as Exhibit A ("Lost Time Claimant").

Out-of-Pocket Loss Claimants whose claims meet or exceed the Five Thousand Dollars and No Cents ($5,000.00) cap for Out-of-Pocket Losses are ineligible to seek relief for Lost Time. Moreover, a Settlement Class Member cannot recover an aggregate amount of more than Five Thousand Dollars and No Cents ($5,000.00) for their combined Out-of-Pocket Loss Claim and Lost Time Claim. All costs associated with the Lost Time Claims, including the amounts paid on Valid Claims and administration costs, shall be paid exclusively out of the Settlement Fund.

iv.  <u>California Claims</u>. California Settlement Class Members can submit a Claim Form for an additional benefit of Ninety Dollars and No Cents ($90.00) per Settlement Class Member as recognition for their statutory claim(s) under California law ("California Claims"). To be eligible to receive compensation for California Claims, Settlement Class Members must attest, under penalty of perjury, that they were residents of California at the time of the Incident. To redeem this

benefit of Ninety Dollars and No Cents ($90.00), Settlement Class Members must submit a self-verifying statement under penalty of perjury, subject to the terms and conditions set herein and in the Claim Form attached hereto as Exhibit A. This additional amount can be combined with either or both Out-of-Pocket-Expense Claims or Lost-Time Claims     All costs associated with the California Claims, including the amounts paid on Valid Claims and administration costs, shall be paid exclusively out of the Settlement Fund.

41.     To the extent the total amount of all Valid Claims for Settlement Class Members (including for Out-of-Pocket Losses, Lost Time, and California Claims) at the end of the Claims Period were to exceed the amount in the Settlement Fund after payment of other expenses from the fund (including payments for all costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; all Taxes and Tax-Related Expenses; the costs for Identity Theft Protection (Medical Shield monitoring); and any Fee and Expense Award approved by the Court for or awarded to Class Counsel), the cash benefits to each eligible Settlement Class Member with a Valid Claim would be decreased on a pro rata basis.  To the extent the total amount of all Valid Claims for Settlement Class Members (including for Out-of-Pocket Losses, Lost Time, and California Claims) at the end of the Claims Period were to be less than the amount in the Settlement Fund after payment of other expenses from the fund (including payments for all costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; all Taxes and Tax-Related Expenses; the costs for Identity Theft Protection (Medical Shield monitoring); and any Fee and Expense Award approved by the Court for or awarded to Class Counsel), the cash benefits to each eligible Settlement Class Member with a Valid Claim would be increased on a pro rata basis, subject to a maximum of One Thousand Dollars and No Cents ($1,000.00) for each California Claims payment.  All payments for costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; the costs for Medical Shield monitoring; and any Fee and Expense Award approved by the Court for or awarded to Class Counsel shall be paid out before the payment of any Valid Claims provided in Paragraph 40, above.

42.     <u>Qualified Settlement Fund Status</u>.  The monies used to pay the claims authorized in the immediately preceding paragraph, consistent with the separate monetary caps for each category of claims shall constitute a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1, as necessary.  The Settlement Administrator shall be responsible for all administrative, accounting, and tax compliance activities in connection with the monies used to pay the claims and the monies deposited with the Settlement Administrator, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § l.468B-l.  Defendant shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-l.  All taxes on income or interest generated by the monies used to pay the claims, if any, shall be paid out before the payment of any Valid Claims provided in Paragraph 40, above.

43.     <u>Non-Monetary Relief (Enhanced Data Security Measures)</u>. In exchange for Plaintiffs' and Settlement Class Members' release of claims as set forth in Section XI, Defendant further has implemented, and/or have agreed to implement, and agrees to maintain, security

– 13 –

measures to protect the PII of its patients for a period of no less than one (1) year after the Effective Date ("Enhanced Data Security Measures"). Any costs associated with the Enhanced Data Security Measures will be borne by Defendant and not paid from the Settlement Fund. The Enhanced Data Security Measures include the following:

i.    Defendant engages, and will continue to engage, third-party security service providers and internal personnel to run automated security monitoring;

ii.   Defendant audits, tests, and trains, and will continue to audit, test, and train, its security personnel regarding any new or modified procedures;

iii.  Defendant segments, and will continue to segment, data by, among other things, creating firewalls and access controls;

iv.   Defendant conducts, and will continue to conduct, regular computer system scanning and security checks;

v.    Defendant routinely conducts, and will continue to conduct, internal training and education to inform employees about the best practices to implement to recognize and avoid electronic threats and internal security personnel about how to identify and contain a breach when it occurs and what to do in response to a breach;

vi.   Defendant retains, and will continue to retain, a Head of Information Security and Architecture who will ensure that all security/technical personnel are qualified to fulfill the roles to which they are assigned; and

vii.  Defendant maintains, and will continue to maintain, a lifecycle management plan to keep updated as needed.

## VI.    DISTRIBUTION PLAN AND CLAIMS PROCESS

44.    Settlement Class Members are eligible to receive monetary relief as provided in Paragraph 40 by submitting a valid and timely Claim Form supported by Reasonable Documentation and/or proper attestation. In order to be deemed timely, Claim Forms must be submitted or postmarked by the Claims Deadline. There will be no obligation to honor or make any payment in connection with any Claim Forms submitted or postmarked after the Claims Deadline, even if such Claim Form otherwise would be valid. The Settlement Administrator will issue all monetary payments to claimants, as provided in Paragraph 40, no later than One Hundred and Eighty (180) days after the Effective Date, in the form of a mailed check. If the Settlement Administrator is notified that a Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Settlement Class Member's estate upon receiving proof the Settlement Class Member is deceased and after consultation with

the Parties' Counsel.

45.    To the extent any claims checks issued to Settlement Class Members for Claims authorized under Paragraph 40 above have not been redeemed or cashed by the One Hundred and Eighty-Fifth (185th) day following the mailing of the last Settlement Class Member Claims check, those additional monies corresponding to the unredeemed and uncashed claims checks shall be awarded to American Lung Association or any other recipient selected by the Court should it request another recipient, in which case the parties will provide the Court with several qualified candidates.  No portion of the Settlement Fund shall revert or be repaid to Defendant after the Effective Date.

46.    For each Claim Form submitted, the Settlement Administrator shall verify that each claimant who submits a Claim Form is in fact a Settlement Class Member, and shall have the discretion and authority to determine whether and to what extent the claimant is entitled to a cash payment for his or her Claim, based on the submission of a valid and timely Claim Form, any Reasonable Documentation, and the other criteria set forth herein.  To the extent the Settlement Administrator determines a Claim Form is deficient in whole or part (including any deficiency relating to the submission of supporting documentation), the Settlement Administrator shall notify the Settlement Class Member of the deficiencies as soon as administratively feasible, but no later than fifteen (15) days after the Claims Deadline, and give the Settlement Class Member fifteen (15) days to cure the deficiencies.  Such notice shall inform the Settlement Class Member that he or she can attempt to cure the deficiencies outlined in the notice.  If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within fifteen (15) days of the determination. The Settlement Administrator may consult with the Parties' Counsel in making such determinations.  The determination of the Settlement Administrator as to the validity or permissibility of a claim shall be final and not subject to appeal. The Settlement Administrator is authorized to contact any Settlement Class Member (by email, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

## VII.    PRELIMINARY APPROVAL

47.    Upon execution of this Agreement by the Parties, Class Counsel shall promptly file a motion with the Court seeking an order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form attached hereto as Exhibit F. The motion for preliminary approval shall request that the Court: (i) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(e) for settlement purposes only; (iii) approve the Notice Program set forth herein and approve the form and content of the Notice; (iv) approve the procedures set forth in Section IX for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay all proceedings in the Litigation unrelated to the Settlement, pending Final Approval of the Settlement; (vi) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim (as defined in Paragraph 63); (vii) appoint settlement class representatives and settlement class counsel; and (viii) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court

will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees and expenses ("Final Approval Hearing").

48.    The Settlement Administrator shall provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").

## VIII.   SETTLEMENT ADMINISTRATOR

49.    The Settlement Administrator shall administer various aspects of the Settlement as provided in Section VI, and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to: (i) overseeing administration of the funds paid by Defendant to Settlement Class Members for Valid Claims; (ii) providing Mail Notice to Settlement Class Members as described in Section IX; (iii) establishing and operating the Settlement Website and the Telephone Hotline; (iv) providing Substitute Media Notice as described in Section IX;  (v) administering the Claims processes; (vi) approving and disapproving Claims submitted pursuant to the Claim Forms, and (vii) distributing cash payments according to the processes and criteria set forth herein and in the exhibits hereto.

50.    The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

     i.    Obtaining from Defendant the name and mailing address of Settlement Class Members for the purpose of sending Mail Notice to Settlement Class Members to the extent that such information is reasonably available from Defendant's records and updating the addresses using a National Change of Address database;

     ii.    Sending out Mail Notice to Settlement Class Members;

     iii.    Publishing or causing to be published the Substitute Media Notice;

     iv.    Obtaining from Defendant information necessary to establish a reasonably practical procedure to verify Settlement Class Members;

     v.    Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

     vi.    Establishing and maintaining a secure Settlement Website allowing access only to the Settlement Class Members, Class Counsel, Defendant's counsel, and the Settlement Administrator;

     vii.    Establishing and maintaining the Telephone Hotline for Settlement Class Members to call with Settlement-related inquiries or request mailed copies of the electronic Claim Form;

     viii.    Responding to any mailed Settlement Class Member inquiries;

ix.        Processing all written notifications of exclusion from the Settlement Class;

x.        Providing weekly reports and, no later than ten (10) days after the Opt-Out Deadline, a final report to Class Counsel and Defendant's counsel, that summarizes the number of written notifications of exclusions received that week, the total number of written notifications of exclusions received to date, and other pertinent information as requested by Class Counsel or Defendant's counsel;

xi.        In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (a) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (b) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

xii.        Reviewing, determining the validity of, approving or disapproving, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Section VI and the Distribution and Allocation Plan attached hereto as Exhibit G;

xiii.        After the Effective Date, processing and transmitting distributions to Settlement Class Members in accordance with Section VI and the exhibits attached hereto;

xiv.        Providing weekly reports and a final report to Class Counsel and Defendant's counsel that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel or Defendant's counsel; and

xv.        Performing any function related to settlement administration at the agreed-upon instruction of Class Counsel and Defendant's counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Section VI and the exhibits attached hereto.

51.    All costs associated with the Settlement Administrator's provision of the services provided for in this Agreement shall be paid exclusively out of the Settlement Fund.

## IX.    NOTICE, OPT-OUTS, AND OBJECTIONS

52.    Upon issuance of the Preliminary Approval Order regarding the Settlement, at the direction of Defendant, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval

– 17 –

Order, but, in any event, the Settlement Administrator will place the Mail Notices for delivery by the Notice Deadline. The Notice will include, among other information: (i) a short and plain statement of the background of the Litigation and description of the nature and scope of Plaintiffs' claims; (ii) a description of the Settlement and the relief provided thereunder; (iii) an explanation of the scope and impact of the release provided under the Settlement; (iv) a statement that any relief to Settlement Class Members is contingent on the Court's approval of the Settlement; (iv) the manner and dates by which Settlement Class Members may object to or opt-out of the Settlement; (v) the date upon which the Final Approval Hearing will occur; and (vi) the web address of the Settlement Website at which Settlement Class Members may access this Agreement, the Claim Form, and other related documents and information concerning the Settlement.

53.     The Notice Program has four components: (1) Mail Notice; (2) Substitute Media Notice; (3) Notice on the Settlement Website; and (4) the Telephone Hotline. The Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom Defendant can ascertain a mailing address from its records with reasonable effort, as updated through the use of a National Change of Address database. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses and shall re-mail the Mail Notice to the extent updated addresses are identified. The Settlement Administrator need make only one attempt to re-mail any Mail Notice that is returned as undeliverable. The Settlement Administrator will effectuate the Substitute Media Notice plan as described in Exhibit E.

54.     The Notice shall include a procedure for a Settlement Class Member to exclude himself or herself from (or "opt out" of) the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include: (i) the name of this Litigation; (ii) the individual's name and address; (iii) a statement that he or she wants to be excluded from the Litigation; and (iv) the individual's signature. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

55.     The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for the Fee and Expense Award (as defined in Paragraphs 67). Objections to the Settlement or to the application for the Fee and Expense Award must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Defendant's counsel. For an objection to be considered by the Court, the objection must be: (i) electronically filed by the Objection Deadline; or (ii) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Defendant's counsel, at the addresses provided at the Settlement Website, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth the following:

– 18 –

      i.      the name of the Litigation;

     ii.      the objector's full name, address, email address, and telephone number;

   iii.      an explanation of the basis upon which the objector claims to be a Settlement Class Member;

   iv.      all grounds for the objection, accompanied by any legal support for the objection;

    v.      the identity of all counsel who represent the objector, including any former or current counsel who previously represented the objector and may be entitled to compensation for any reason related to the objection to the Settlement or the fee application;

   vi.      the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

  vii.      the number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date on which the objector files the objection, the caption of each case in which the objector has made such objections, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

 viii.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objections, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

   ix.      any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

    x.      a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

   xi.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

  xii.      the objector's signature on the written objection (an attorney's signature is not sufficient).

56.     The Mail Notice portion and Substitute Media Notice Portion of the Notice

Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

57.     The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

58.     Within ten (10) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Defendant's counsel with one or more affidavits confirming that the Mail Notice, issuance of Substitute Media Notice, posting of Notice on the Settlement Website, and creation of the Telephone Hotline were completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representative's motion for final approval of the Settlement.

59.     All costs and expenses associated with providing Notice to Settlement Class Members and the implementation of the Notice Program including, but not limited to, the Settlement Administrator's fees, shall be paid exclusively out of the Settlement Fund.

## X.     FINAL JUDGMENT

60.     Settlement Class Representative's motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. By no later than thirty (30) days after the Notice Deadline, Plaintiff shall file a motion for final approval of the Settlement and a motion for the Fee and Expense Award. By no later than seven (7) days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any Settlement Class Member objections, including any objections to the requested attorneys' fees and expense reimbursement, and to file additional papers in support of the Settlement.

61.     At the Final Approval Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement, and Class Counsel's application for the Fee and Expense Award. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the application for the Fee and Expense Award, provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 55, above.

62.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Judgment granting final approval of the Settlement, and whether to approve Class Counsel's request for the Fee and Expense Award. The proposed Final Judgment that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Defendant's counsel. Such proposed Final Judgment shall, among other things:

      i.     Determine that the Settlement is entered into in good faith, is fair, adequate, and reasonable, and is in the best interests of the Settlement Class;

      ii.     Determine that the Settlement includes no admission of liability by

Defendant;

iii.   Finally certify the Settlement Class for settlement purposes only;

iv.   Determine that the Notice provided under the Notice Program satisfied Due Process requirements and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

v.   Dismiss the Litigation with prejudice;

vi.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section XI, including during the pendency of any appeal from the Final Judgment;

vii.   Release Defendant from the Released Claims, as set forth in Section XI;

viii.   Reserve the Court's continuing and exclusive jurisdiction over Defendant, and all Settlement Class Members (including all objectors), to administer, supervise, construe, and enforce this Agreement in accordance with its terms; and

ix.   Contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, and/or settlement of this Litigation.

## XI.   **RELEASES**

63.   As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective spouses, children, heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Lincare Holdings Inc., which includes its present and former direct and indirect, domestic and foreign parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and for each of them the present and former directors, officers, employees, agents, insurers or reinsurers, shareholders, attorneys, advisors, consultants, data security consultants or servicers, data security monitors or compliance providers, vendors, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns (collectively the "Released Parties"), jointly and severally, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (i) the exposure, compromise, or disclosure of Settlement Class Members' PII; (ii) Defendant's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (iii) Defendant's information

– 21 –

security policies, procedures, and practices or training; and (iv) Defendant's notice of the Incident to Settlement Class Members (the "Released Claims").

64.    For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 et seq., California Civil Code § 1750 et seq., California Civil Code § 1798.80 et seq., California Civil Code § 56.10 et seq., and any similar statutes or data breach notification statutes in effect in the United States or in any state in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on trade practices provided for under any state statutes or laws; any causes of action based on privacy rights provided for under the constitutions of the United States or of any state in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.  The Released Claims do not include any claims arising from or relating to any conduct by Defendant after the Effective Date.

The Releasing Parties understand that the Releasing Parties are releasing Released Claims that the Releasing Parties may not know about (i.e., "Unknown Claims," as defined in paragraph 30).  Such a release is the Releasing Parties' knowing and voluntary intent, even though the Releasing Parties recognize that someday the Releasing Parties might learn that some or all of the facts the Releasing Parties currently believe to be true are not true.  Nevertheless, the Releasing Parties are assuming that risk and the Releasing Parties agree that this Agreement shall remain effective in all respects in any such case.  The Releasing Parties expressly waive all rights the Releasing Parties might have under any law that is intended to protect the Releasing Parties from waiving Unknown Claims (as defined in paragraph 30) and the Releasing Parties understand the significance of doing so.

65.    The Final Judgment shall contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, or settlement of this Litigation.  No Party or related person of a Party shall assert any claims for violation of Rule 11 of the Federal Rules of Civil Procedure, or any other similar laws relating to the institution, prosecution, defense, and/or settlement of the Litigation. The Parties agree that the Released Claims are being settled voluntarily after consultation with an experienced mediator and legal counsel who could assess the strengths and weaknesses of their respective clients' claims or defenses.

66.    Upon entry of the Final Judgment, the Releasing Parties and Defendant shall

be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties, Plaintiffs, and their counsel, or based on any actions taken by any of the Released Parties, Plaintiffs, or their counsel that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be used as a complete defense to any proceeding subject to this section.

## XII.   ATTORNEYS' FEES AND EXPENSES

67.     Defendant agrees that Class Counsel may seek an award of attorneys' fees, costs, and expenses in this action, subject to Court approval. Class Counsel will request an award of attorneys' fees not to exceed thirty-three percent (33.3%) of the Settlement Fund and reimbursement of litigation costs and expenses not to exceed Fifty Thousand Dollars and No Cents ($50,000.00) (collectively, the "Fee and Expense Award"). Class Counsel asserts that the Fee and Expense Award represents fair compensation to Class Counsel for the risks they undertook in commencing and prosecuting the Litigation on a contingency basis, and for the benefits obtained for and conferred upon Plaintiffs and the Settlement Class through prosecution of the Litigation and negotiation of the Settlement. Class Counsel agrees not to seek more than thirty-three percent (33.3%) of the Settlement Fund for attorneys' fees and not to seek more than Fifty Thousand Dollars and No Cents ($50,000.00) for reimbursement of litigation costs and expenses.   The Fee and Expense Award paid to Class Counsel shall be paid exclusively out of the Settlement Fund.

68.     Within ten (10) business days of the later of (i) the Effective Date, (ii) a final order approving Class Counsel's Fee and Expense Award, or (iii) after the time for seeking rehearing, appellate or other review of the Fee and Expense Award, the Settlement Administrator shall pay to the Morgan & Morgan Complex Litigation Group all Court-approved attorneys' fees, costs, and expenses. In the event that the amount of the Fee and Expense Award awarded by the Court is reduced on appeal, the Settlement Administrator shall pay only the reduced amount of the Fee and Expense Award awarded by the Court. The payment of the Fee and Expense Award awarded by the Court shall be made through a wired deposit by the Settlement Administrator into the attorney client trust account for the Morgan & Morgan Complex Litigation Group. After the Settlement Administrator has distributed the Fee and Expense Award to the Morgan & Morgan Complex Litigation Group, Class Counsel shall solely be responsible for allocating the Fee and Expense Award to any counsel that contributed to the prosecution and/or settlement of the Litigation.

69.     The finality or effectiveness of the Settlement and this Agreement will not be dependent on the allocation and distribution of the Fee and Expense Award among counsel that contributed to the prosecution and/or settlement of the Litigation. Any disputes regarding the allocation and distribution of the Fee and Expense Award will be handled by and among Class Counsel and any counsel that contributed to the prosecution and/or settlement of the Litigation.

70.     In the event the Court declines to approve, in whole or in part, the payment of the Fee and Expense Award that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the Fee and Expense Award shall constitute grounds for cancellation or termination of this Agreement.

PD.42585994.1

## XIII.  TERMINATION

71.    Defendant shall have the right to, in its sole discretion, terminate the Agreement if more than 250 Settlement Class Members submit valid requests to opt out of the Settlement Class.  In no event will Class Counsel, the Settlement Class Representative, Defendant's corporate officers, or Defendant's counsel encourage Class Members to opt-out of the Settlement Class.

72.    This Settlement may be terminated by Settlement Class Representative or Defendant by serving on counsel for the opposing Parties and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Defendant's counsel) after any of the following occurrences:

  i.  Class Counsel and Defendant's counsel all agree to termination before the Effective Date;

  ii.  The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

  iii.  An appellate court reverses the Final Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

  iv.  The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Judgment, or the Settlement; or

  v.  The Effective Date does not occur.

73.    In the event of a termination as provided in Paragraph 71 or 72, or if the Court disapproves, rejects, or alters any of the Settlement terms contained in this Agreement for any reason, this Agreement shall be considered null and void, and the certification for settlement purposes of the Settlement Class will be vacated; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the *status quo ante* in the Litigation as of July 16, 2023; and the Settlement Administrator will promptly return to Defendant the Settlement Fund, minus any costs incurred to date by the Settlement Administrator for settlement administration or Notice.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIV.  MISCELLANEOUS

74.    Publicity.  Plaintiffs' counsel and/or the Plaintiffs will not issue press releases, disseminate any statements or information via social media, or otherwise initiate public statements regarding the settlement, outside of the court-approved notice program. The parties will not make statements of any kind to any third-party regarding the settlement prior to the filing of a

– 24 –

motion for preliminary approval with the Court, with the exception of the settlement administrator. The parties may make public statements to the Court as necessary to obtain preliminary or final approval of the settlement, and plaintiffs' counsel will not be prohibited from communicating with any person in the settlement class regarding the litigation or the settlement.

75.    <u>Destruction of Confidential Documents</u>.  Consistent with all confidentiality agreements in the Litigation, the originals and all copies of all confidential documents and/or information subject to all confidentiality agreements ("Confidential Information") shall be returned to the producing party within 30 days after the Effective Date.  The parties may agree in writing that certain Confidential Information may be destroyed in lieu of being returned.  Nothing in the Agreement shall require attorney work product or pleading files to be returned or destroyed, provided that any such retained materials remain subject to the terms of the confidentiality agreement.

76.    <u>Change of Time Periods</u>.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court, or by written agreement of Class Counsel and Defendant's counsel and as approved by the Court, without notice to Settlement Class Members.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

77.    <u>Singular and Plurals</u>.  As used in this Agreement, all references to the plural shall also mean the singular, and to the singular shall also mean the plural, whenever the context so indicates.

78.    <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

79.    <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

80.    <u>Obligation to Meet and Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

81.    <u>Integration</u>.  This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein (and in any Exhibits attached hereto).

82.    <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

83.    <u>Governing Law</u>.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding

choice of law.

85.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required.  Any signature submitted by facsimile, DocuSign, or through email of an Adobe PDF shall be deemed an original.

85.    Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator.  As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

86.    Notices.  All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email:   jyanchunis@ForThePeople.com

**TURKE & STRAUSS LLP**
Raina Borrelli
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
Email: raina@turkestrauss.com

All notices to Defendant provided for herein, shall be sent by overnight mail to:

**PHELPS DUNBAR LLP**
Michael S. Hooker
Jason A. Pill
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone: (813) 472-7550
Facsimile: (813) 472-7570
Email:  Michael.Hooker@phelps.com
        Jason.Pill@phelps.com

– 26 –

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

87.     <u>Authority</u>.   Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

88.     <u>No Construction Against Drafter</u>.  This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.


Lincare Holdings Inc. (Defendant)          Counsel for Defendant

*Sheila M. Kalteux*                        *Michael Hooker*
_____                   _____
Sheila Kalteux, Senior Corporation Counsel     PHELPS DUNBAR LLP
Lincare Holdings Inc.                      Michael S. Hooker
19387 U.S. Highway 19 N.                    Jason A. Pill
Clearwater, FL 33764                       100 South Ashley Drive, Suite 1900
                                           Tampa, Florida 33602


Counsel for Plaintiffs and Settlement Class


By: _____

Date: 10/06/2023


John A. Yanchunis
MORGAN & MORGAN

Raina C. Borrelli
Samuel J. Strauss
Brittany Resch
TURKE & STRAUSS LLP

Stephen R. Basser
Samuel M. Ward
BARRACK, RODOS & BACINE

– 27 –

Alexandra Honeycutt
Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

Carl V. Malmstrom
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC

*Counsel for Plaintiffs and the Settlement Class*