## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

LINCARE HOLDINGS INC. DATA
BREACH LITIGATION

Case No. 8:22-cv-01472-TPB-AAS

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW

On October 6, 2023, Plaintiffs moved for preliminary approval of the proposed class action Settlement and for certification of the Settlement Class. Doc. 105 (the "Preliminary Approval Motion"). The Court preliminarily approved the Settlement on December 15, 2023, finding that the terms of the Settlement were "fair, reasonable, and adequate" and the Class should be given notice. Doc. 113 (the "Preliminary Approval Order").

Plaintiffs now move for final approval of the Settlement and for certification of the Settlement Class, and request that the Court:

1) Approve the Settlement as fair, reasonable, and adequate under Rule 23(e);
2) Certify the Settlement Class under Rule 23(b);
3) Appoint Plaintiffs as Class Representatives for the Settlement Class;
4) Appoint as Class Counsel John A. Yanchunis of Morgan and Morgan Complex Litigation Group, Stephen R. Basser of Barrack, Rodos & Bacine, Raina Borrelli of Turke & Strauss LLP, Alexandra M. Honeycutt of Milberg, Coleman, Bryson, Phillips, Grossman PLLC, and Carl V. Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLC;
5) Find the Notice Program as implemented satisfies Rule 23 and due process;
6) Appoint Kroll Settlement Administration, LLC ("Kroll") as the Settlement Administrator;
7) Grant Class Counsel's Motion for Attorneys' Fees and Costs;
8) Exclude the opt-outs from the Settlement; and
9) Grant any further relief as the Court deems just and proper.

As set forth in the declaration of Jeanne C. Finegan of Kroll, Kroll implemented an extensive Court-approved Notice Program with Direct Notice and also through internet sponsored search listings that advertised the Settlement Website, all of which were designed to reach the Class. *See generally*, Declaration of Jeanne C. Finegan, attached as **Exhibit 1** ("Finegan Decl."). The Notice Program reached more than 81% of the Class through direct notice via postal mail and the supplemental print media and online ads. *Id.* ¶ 4. The response from the class has been positive: as of February 13, 2024 a total of 16,337 claims have been received with only 53 opt-outs[1] and no objections. *Id.* ¶¶ 21–24. The Court should accordingly finally approve the Settlement in this case.

## I.    INTRODUCTION

Plaintiffs commenced this litigation after Defendant, Lincare Holdings, Inc. ("Defendant" or "Lincare"), disclosed that on or about September 2021, it identified unusual activity on certain systems within its network. Doc. 50 ¶ 4. After launching an investigation, Lincare learned that it had experienced a cyberattack resulting in potential exposure of sensitive and private personal information of certain of its current and former patients (the "Data Security Incident"). Doc. 50 ¶ 4.

On July 28, 2022, Plaintiffs filed a proposed class action lawsuit in the United States District Court, Middle District of Florida, relating to the Data Security Incident.

---

[1] Class Counsel are submitting the opt-outs via identifiers to preserve the privacy of individuals who have requested exclusion, and will submit to the Court *in camera* the names of those individuals upon request of the Court.

Thereafter, on December 30, 2022, Plaintiffs filed a Consolidated Class Action Complaint. Doc. 50.

As discussed in detail in Plaintiffs' Preliminary Approval Motion (Doc. 105), the Settlement provides for the creation of a $7,250,000.00 Settlement Fund that will be used to pay for all resolution related sums, including: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Identity-Theft Protection and medical monitoring services through Medical Shield; (iv) Statutory Damage Payments for California Confidentiality of Medical Information Act Claims; (v) Reimbursement for Out-of-Pocket Losses and Attested Time; and (vi) Attorneys' Fee Award and Costs. *See* S.A. ¶¶ 39–40. Notably, the Settlement is non-reversionary. S.A. ¶ 45.

The Settlement compares favorably with settlements in similar litigation and was reached only after intensive, arms-length negotiations before a neutral and experienced mediator, Rodney A. Max, Esq. If finally approved, the Settlement will resolve all claims arising out of the Data Security Incident and will provide Class Members with the precise relief this litigation was filed to obtain.

Accordingly, pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

## II.    BACKGROUND

### A. Litigation Summary and Information About the Settlement

The parties agreed on and retained Rodney A. Max, a highly experienced mediator, to assist the parties with settlement negotiations. Class Counsel Joint

Declaration, attached as **Exhibit 2** ("Joint Decl."), ¶ 8. Prior to mediation, the parties briefed their respective positions on the facts, claims, defenses, and assessed the risks of litigation and conducted significant jurisdictional discovery including written discovery, document review, and depositions.

On July 11, 2023, the parties had a full-day mediation session with Mr. Max. *Id.* ¶ 8. The negotiations were hard-fought throughout and the process was conducted at arm's length. *Id.* After extensive arm's length settlement negotiations conducted through Mr. Max, the parties reached an understanding in principle on the essential terms of settlement on July 17, 2023. *Id.* The subject of attorneys' fees, costs, and expenses (*i.e.*, the Fee Award and Costs that Plaintiffs will seek should the Settlement be approved), subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.*

Based on Plaintiffs' counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Lincare, Plaintiffs' counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class is defined as the:

3

All individuals in the United States whose PII was stored by Lincare Holdings Inc. and potentially disclosed, compromised, or accessed as a result of the cyber-breach or data incident experienced by Lincare Holdings Inc. in September 2021.

## 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Out-of-Pocket Losses for up to $5,000.00;

- Reimbursement of attested Lost Time up to four (4) hours at twenty dollars ($20) per hour;

- One (1) year of Identity-Theft Protection and medical information monitoring services, known as Medical Shield provided by CyEx (with the Pango Group) (including medical monitoring services; real-time alerts for suspicious activity; identity restoration and recovery services; and $1,000,000.00 in medical identity theft insurance with no deductible). This benefit is available regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time. However, the Settlement Class Member must elect this benefit, it is not automatic;

- Statutory Payments for CMIA Claims in the amount of $90.00.

S.A. ¶ 40.

Participating Settlement Class Members are subject to an individual aggregate cap of $5,000.00. Thus, Participating Settlement Class Members may submit claims for reimbursement of Attested Time, Out-of-Pocket Losses, and CMIA Claims (where appropriate for California Settlement Subclass members) but the combined claims will be subject to the individual aggregate cap of $5,000.00. S.A. ¶ 40.

The services to be provided by Pango under the Settlement are robust and important. The retail cost of buying the same Identity-Theft Protection and medical

information monitoring services (*i.e.*, Medical Shield) would be $19.95 per person per month, amounting to $239.40 per year for this one year of service. These services are being provided under the Settlement for a total cost of $573,800.00 to be drawn from the Settlement Fund.

### 3. The Notice Program

On December 15, 2023, the Court preliminarily appointed Kroll to be the Settlement Administrator. On January 12, 2024, Kroll commenced the Notice Program. Finegan Decl. ¶ 3. The Notice program utilized direct notice disseminated via U.S. mail to all Settlement Class members whose addresses are available within Defendant's records. *Id.* ¶¶ 11–13. On December 6, 2023, Kroll also established a Settlement Website, which included information about the Settlement, related case documents, and the Settlement Agreement, as well as file claim forms electronically. *Id.* ¶ 8. Kroll also employed internet sponsored search listings and social media advertising to bolster the prominence of the Settlement Website. *Id.* ¶ 14–17. As of February 13, 2024, there have been 93,042 total unique users who have visited the Settlement Website. *Id.* ¶ 8. Finally, on December 14, 2023, Kroll established the toll-free number that Class Members are able to listen to a summary of the Settlement, interact with an automated FAQ and associated answer, request notice and claim forms, and during business hours speak with a representative. *Id.* ¶ 9. As of February 13, 2024, there have been 15,791 calls spanning 14,059 minutes of total use with 4,599 callers connected to live operators. *Id.*

### 4. Attorneys' Fees, Costs, and Expenses

Lincare has agreed that, subject to this Court's approval, Class Counsel may request an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $50,000.00. S.A. ¶¶ 67–70. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Joint Decl. ¶ 8. Class Counsel have contemporaneously filed their request for attorneys' fees in the amount of one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses of $41,055.42.

### 5. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (i) the exposure, compromise, or disclosure of Settlement Class Members' PII; (ii) Defendant's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (iii) Defendant's information security policies, procedures, and practices or training; and (iv) Defendant's notice of the Incident to Settlement Class Members.

S.A. ¶ 63.

## III.    ARGUMENT

**A. Final Certification of the Settlement Class is Appropriate**

This Court provisionally certified the Settlement Class in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). Doc. 99; *See* Fed. R. Civ. P. 23(a)(1)–(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since the Court's provisional certification and commencing the Notice Program there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiffs' Preliminary Approval Motion (Doc. 105), Plaintiffs respectfully submit that the Settlement Class should be finally certified.

**1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

**a. Numerosity.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 2.9 million people in the Settlement. Thus, numerosity is easily satisfied.

### b. Commonality.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that at least one common contention is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013); *Dukes*, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."). Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (citations omitted).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiffs alleged, among others, the following common questions:

    a. Whether Lincare had a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII/PHI;

    b. Whether Lincare knew or should have known of the susceptibility of its data security systems to a data breach;

    c. Whether Lincare's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

    d. Whether Lincare's failure to implement adequate data security measures allowed the Data Security Incident to occur;

e.  Whether Lincare failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f.  Whether Lincare adequately, promptly, and accurately informed Plaintiffs and Class members that their PII/PHI had been compromised;

g.  How and when Lincare actually learned of the Data Security Incident;

h.  Whether Lincare's conduct, including its failure to act, resulted in or was the proximate cause of the Data Security Incident, resulting in the loss of the PII/PHI of Plaintiffs and Class Members;

i.  Whether Lincare adequately addressed and fixed the vulnerabilities which permitted the Data Security Incident to occur;

j.  Whether Lincare engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective, and/or declaratory relief and/or an accounting is appropriate; and

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Lincare's wrongful conduct.

The central question behind every claim in this litigation boils down to whether Defendant adequately secured its patients' Personal Information. The answer to that question depends on common evidence that does not vary from class member to class member, and can be fairly resolved on a class-wide basis (via litigation or settlement) for all class members at once. These common issues converge at the center of Defendant's conduct in this litigation, satisfying the commonality requirement.[2]

### c.  Typicality.

Typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or

---

[2] *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) (commonality satisfied where all "class members had their private information stored in Countrywide's databases at the time of the data breach."); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (same).

practice and are based on the same legal theory."[3] When the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, *i.e.*, that Defendant had a legal duty to protect Plaintiffs' and Class Members' Personal Information. Because there is a "sufficient nexus" between Plaintiffs' and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representatives "not possess interests which are antagonistic to the interests of the class" and that their counsel "be qualified, experienced, and generally able to conduct the litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citations omitted). Both are satisfied here.

Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. They provided their Personal Information to Defendant and allege it was compromised as a result of the Data Security Incident. Those claims are identical to the claims of the Settlement Class, and with no objections and 53 opt-outs to-date (with the deadline to object or opt-out on March 14, 2024),

---

[3] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Plaintiffs and the Settlement Class desire the same outcome in this litigation. Plaintiffs have prosecuted this case for the benefit of all Settlement Class Members, participating in the litigation by reviewing pleadings, participating in discovery, and providing input in crafting and approving the Settlement.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Joint Decl. ¶¶ 1, 4; *see* Doc. 113 (finding that proposed Settlement Class Counsel are "experienced and adequate counsel"). Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

## 2. The Predominance and Superiority Requirements of Are Met.

Certification under Rule 23(b)(3) requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 644 (M.D. Fla. 2011) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Katzman Korr, P.A.*, 222 F.R.D. 692, 700

(S.D. Fla. 2004). The Settlement Class readily meets these requirements.

### a. Predominance.

Rule 23(b)(3)'s predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[4] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[5]

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiffs' Personal Information,

---

[4] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[5] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–24 (3d ed. 2005)).

like that of every other Class member—can be established through generalized evidence.[6] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting their Personal Information and whether Defendant breached that duty. The many common questions that arise from Defendant's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[7] Because the claims are being certified for settlement purposes, there are no manageability issues.[8]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. "The inquiry into whether the class action is the superior method

---

[6] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

[7] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[8] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

for a particular case focuses on 'increased efficiency.'"[9] The Court may consider: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants.

Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the single opt-out and no objectors, as well as the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[10]

Accordingly, the requirements for certification under Rule 23(a) and (b) are met.

### B. Plaintiffs' Counsel Should Be Finally Appointed as Class Counsel.

---

[9] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).
[10] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in their Joint Declaration, Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. Joint Decl. ¶¶ 3, 6, 20. Accordingly, the Court should finally appoint John A. Yanchunis, Stephen R. Basser, Raina Borrelli, Alexandra M. Honeycutt, and Carl V. Malmstrom as Settlement Class Counsel.

### C. The Settlement Is Fair, Reasonable, and Adequate.

The procedure for review of a proposed class action settlement is a well-established, two-step-process. 4 NEWBERG ON CLASS ACTIONS, § 11.25, at 38–39 (4th ed. 2002). In the first step, the Court determines, as it did here, whether the proposed settlement should be preliminarily approved. *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004). In the second step, after hearing from any

objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633–35. In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012)).

### 1. The Settlement Satisfies the Standard for Final Approval

Under Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). The Advisory Committee noted, however, that "[t]he goal of this amendment is not to displace any factor" previously considered in any given Circuit. *See* 4 NEWBERG ON CLASS ACTIONS, § 13:58 ("[V]arious pre-existing legal

factors are not captured by amended Rule 23(e)(2)'s list of factors may prove relevant in particular cases"). The revised rule reflects factors already used in the Eleventh Circuit in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

1) the existence of fraud or collusion behind the settlement;
2) the complexity, expense, and likely duration of the litigation;
3) the stage of the proceedings and the amount of discovery completed;
4) the probability of the Class Representative's success on the merits;
5) the range of possible recovery; and
6) the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement

*Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at *8 (S.D. Fla. April 13, 2016), (citing *Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors shows this Settlement to be eminently fair, adequate, and reasonable.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiffs and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Settlement Class Counsel have extensive experience prosecuting class actions, particularly privacy and data breach cases, throughout the country, and there is no conflict or any antagonism between Plaintiffs and the Settlement Class, as evidenced by the motions practice and litigation efforts reflected on the Court's docket. Moreover, the Settlement was negotiated at arm's length under the supervision of an experienced neutral Rodney A. Max. Joint Decl. ¶ 8. Subsections (A) and (B) of Rule 23(e)(2) are therefore met. These circumstances weigh in favor of

approval.[11] Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendations of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633, 703 (M.D. Fla. 2005). With the benefit of extensive experience in this area, Settlement Class Counsel favor the Settlement and recommend its final approval.

### b. The Relief Provided to the Settlement Class is Adequate

The relief offered by the Settlement (both monetary and injunctive) is more than adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to succeed against dispositive motions, class certification, and survive any appeals.

Almost all class actions involve an inherent level of risk, expense, and complexity, which is one reason why judicial policy so strongly favors resolving class actions through settlement. "[T]here is an overriding public interest in setting class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class

---

[11] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1998). This case is not only complex, but it is in an unsettled field of litigation: data breach litigation. *See, e.g.*, *In re Countrywide*, 2010 WL 3341200 at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this [data breach] case is unlikely to produce the plaintiffs' desired results").

Data breach cases, such as this one, are unsettled, expensive, and complex. *See In re Sonic Corp. Cust. Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Cust. Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class Members gain significant, solid benefits now without having to face any further risk.

While Plaintiffs believe that they would prevail on their claims, there is little directly analogous precedent to rely upon. Beyond the merits, class certification is challenging in any case. Further, while Plaintiffs believe that they would be able to

obtain certification outside of a settlement context and maintain certification through trial, this is not certain. Any potential certification would also be subject to later appeal and potential reversal. The cost of trial and any appeals would be significant and would considerably delay the resolution of this litigation without the guarantee of any relief.

The Settlement is a non-reversionary $7,250,000.00 fund that includes notice and any awarded attorneys' fees and costs. The benefits available here compare favorably to what Class Members could recover if successful at trial. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of up to $5,000 for out-of-pocket losses, as well as reimbursement of Attested Time up to four hours at twenty dollars per hour. Settlement Class Members are also eligible to enroll in valuable Identity-Theft Protection and medical information monitoring services through Medical Shield, and statutory payments for CMIA claims in the amount of $90.00. S.A. ¶ 40. Given the relief available, Class Counsel believe the results achieved are well within the range of possible recovery at trial and certainly within approval in the settlement context.

By way of example of class action settlements approved in this District, in *In re 21st Century Oncology Customer Data Security Breach Litigation*, No. 8:16-md-02737-MSS-AEP (M.D. Fla.) ("*In re 21ˢᵗ Century*"), a class was brought for a data breach involving sensitive information similar to this case (but *In re 21st Century* involved Social Security numbers, which are not at issue here). Final approval was granted in June 2021, where settlement class members were entitled to recover similar types and amounts of reimbursement: $10,000 for out-of-pocket expenses ($5,000 here); $20 per hour for up

to two hours of time spent related to the data breach ($20 per hour and up to four hours here); and two years of identity theft protection services (one year of enhanced Identity-Theft Protection and medical information monitoring services here). *In re 21st Century*, Docs. 242, 249, 253, 269. And eligible Settlement Class Members in this case are also entitled to seek CMIA payments totaling up to $90.

In other districts similar class action settlements have been approved over objection of class members (whereas no objections have been received here). *See, e.g.*, *In re Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05914-PAE, Doc. 156 (S.D.N.Y. Aug. 5, 2022) (final approval granted to data security incident class action involving Social Security Numbers and related sensitive information, providing recovery up to: $10,000 for out-of-pocket expenses; $20 per hour for time spent; providing financial fraud protection services); *Pfeiffer v. RadNet, Inc.*, No. 2:20-cv-09553-RGK-SK, Doc. 70 (C.D. Cal. Feb. 22, 2022) (final approval granted to data breach class action involving Social Security numbers and related sensitive information, providing recovery up to: $15,000 for out-of-pocket expenses; $25 per hour for five hours for time spent; providing credit monitoring and identity theft restoration services). Given that Social Security numbers were not at issue in this case, the benefits that Settlement Class Members stand to gain compare favorably against these other cases that did involve Social Security numbers.

### c. The Settlement Treats Class Members Equitably

Finally, Amended Rule 23(e) requires that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for

reimbursement following submission of a claim form and Identity Theft Protection and medical information monitoring services through Medical Shield. S.A. ¶ 40; Joint Decl. ¶ 18. The proposed relief is also proportional to damages incurred by each Settlement Class Member.

### D. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren* 693 F. Supp. at 1060; *see also In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). As one district court stated:

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel have substantial experience prosecuting large, complex consumer class actions. Joint Decl. ¶¶ 1, 4; *see* Doc. 113 (finding that proposed Settlement Class Counsel are "experienced and adequate counsel"). After discovery, independent fact investigation, briefing Defendant's motion to dismiss, and mediation

22

before a well-qualified and experienced mediator, Class Counsel are confident that the Settlement provides significant relief to the Class, and is in the best interests of the Class. Joint Decl. ¶ 20. Class Counsel heartedly endorse the Settlement. Additionally, the reaction of the Settlement Class has been positive. As of February 13, 2024, there are no objections, only 53 opt-outs, and 16,337 claims have been received. Joint Decl. ¶ 22. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement").

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court finally approve the Class Settlement, finally certifying the Settlement Class, finally appointing Plaintiffs as Class Representatives, finally appointing as Class Counsel John A. Yanchunis of Morgan and Morgan Complex Litigation Group, Stephen R. Basser of Barrack, Rodos & Bacine, Raina Borrelli of Turke & Strauss LLP, Alexandra M. Honeycutt of Milberg, Coleman, Bryson, Phillips, Grossman PLLC, and Carl V. Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLC, finding the Notice Program as implemented

satisfies Rule 23 and Due Process, finally appointing Kroll as the Settlement Administrator, granting Class Counsel's attorneys' fees of $2,416,666.67 and litigation expenses of $41,055.42, excluding the 53 opt-outs listed in Exhibit G of the Declaration of Jeanne C. Finegan, and dismissing the action with prejudice.

### Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiffs conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

Dated: February 14, 2024                    Respectfully submitted,

*/s/ John A. Yanchunis*

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

STEPHEN R. BASSER
sbasser@barrack.com
**BARRACK RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0660
Fax: (215) 963-0838

RAINA C. BORRELLI
raina@turkestrauss.com
**TURKE & STRAUSS LLP**

24

613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

ALEXANDRA M. HONEYCUTT
ahoneycutt@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PPLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080

CARL V. MALMSTROM
malmstrom@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114

***Attorneys for Plaintiffs and the Proposed
Class***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 14, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ *John A. Yanchunis*</u>

26